

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
09/02/2020

| | | |
|---|---|---|
| IN RE: | § | |
| **NORTHBELT, LLC** | § | **CASE NO: 19-30388** |
| Debtor | § | |
| | § | **CHAPTER 11** |

<u>**MEMORANDUM OPINION AND ORDER**</u>
*Resolving ECF Nos. 177 & 180*

## I.      Introduction

On May 29, 2020, the Court issued its Memorandum Opinion and Order ("*May 29, 2020 Memorandum Opinion and Order*") that, inter alia, denied confirmation of Northbelt, LLC's ("*Debtor*") First Amended Chapter 11 Plan.[1] The Court directed the Debtor to file a modified plan within 45 days that "addresses the Court's feasibility concerns discussed herein and takes into account treatment of Wilmington Trust's claim."[2] On July 2, 2020, Wilmington Trust, N.A. filed its Motion for Relief from Stay ("*Motion for Relief*").[3] On July 13, 2020, Debtor filed its Modified Chapter 11 Plan ("*Modified Plan*").[4] On August 24, 2020, Wilmington Trust, N.A. filed its Objection to Confirmation of the Plan ("*Plan Objection*").[5] On August 21, 2020, the Court held a hearing on Wilmington Trust, N.A.'s Motion for Relief and the confirmation of Debtor's Modified Plan. The Court took each matter under advisement and the Court now issues the instant Memorandum Opinion and Order.

## II.      Analysis

This Court holds jurisdiction pursuant to 28 U.S.C. § 1334 and now exercises its jurisdiction in accordance with Southern District of Texas General Order 2012–6.[6] The matters before the Court constitute core proceedings under 28 U.S.C. § 157(b)(2)(A), (G), & (L). Therefore, the Court holds constitutional authority to enter a final order and judgment on all three matters.[7] Finally, venue is governed by 28 U.S.C. §§ 1408, 1409. Venue is proper because Debtor's principal place of business has been in the Southern District of Texas for the 180 days immediately preceding the Petition Date.

Wilmington Trust, N.A. contends that while the Debtor timely filed the Modified Plan within the 45-day period described in the Court's May 29, 2020 Memorandum Opinion and Or-

---

[1] ECF Nos. 168–169.
[2] *Id.*
[3] ECF No. 177.
[4] ECF No. 180.
[5] ECF No. 193.
[6] *In re: Order of Reference to Bankruptcy Judges*, Gen. Order 2012–6 (S.D. Tex. May 24, 2012).
[7] *See Wellness Intern. Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1938–40 (2015); *Stern v. Marshall*, 564 U.S. 462 (2011).

der,[8] the Debtor otherwise failed to comply with the Court's instructions that the Debtor file a modified plan that "addresses the Court's feasibility concerns discussed herein and takes into account treatment of Wilmington Trust's claim."[9] Wilmington Trust, N.A. sets forth, inter alia, the following violations contained within the Debtor's Modified Plan:

i. Despite the $13,200,000.00 Opinion Valuation, the Debtor values the secured portion of Wilmington Trust's claim at $7,600,000.00 in the Modified Plan. The Modified Plan does not address the remaining $5,600,000.00 of Secured Lender's secured claim.
ii. The Modified Plan proposes to re-amortize $7,600,000.00 of the Loan over 30 years and reduce the interest rate from 5.036% to 3.25%.
iii. The Modified Plan proposes to cease making payments to Secured Lender to escrow amounts for taxes, insurance, or reserves under the Loan Documents. The Modified Plan proposes no payments of any kind until at least January 2021. When payments resume, they would be reduced from $128,604.51 to $33,075.38.
iv. The Modified Plan proposes to refinance the balance of the Loan, up to $7,600,000.00, on the Loan's original maturity date in October 2024, but offers no analysis of the Debtor's ability to refinance any portion of the Loan.
v. The Modified Plan does not propose to cure any of the Events of Default addressed by the Court in the May 2020 Opinion. The May 2020 Opinion found that the Debtor did not have the ability to access the funds in the Reserve Escrow accounts due to the Events of Default. *See* May 2020 Opinion pg. 64 (Debtor "may not withdraw funds from the Reserve Escrow without first curing its Events of Default under the Loan Agreement."). The Debtor ignores the Court's May 2020 Opinion and proposes in the Plan that Secured Lender "shall release all reserve funds to the Debtor."
vi. Moreover, the Modified Plan proposes to rewrite the Loan Documents to eliminate Events of Default altogether. *See* Modification at pg. 4 ("The only default provisions that shall apply to this Allowed Secured Claim shall be those described in and set forth in the Plan."). Section 10.09 of the June 2019 Plan provides generally that the Debtor's failure to satisfy its obligations under the Plan constitutes an event of default if not cured within 30 days of notice thereof, but provides no specific events of default related to Secured Lender or the Loan Documents. The Modification does not appear to add any default provisions.

Upon examination of the Debtor's Modified Plan, it leaves no doubt that it fails to address any of the Court's concerns set forth in its May 29, 2020 Memorandum Opinion and Order. Debtor takes a contradictory position with respect to the valuation of the property in this case. The Court determined in its Memorandum Opinion that the property is valued at $13,200,000.00. However, at the hearing on August 31, 2020, the Debtor, without any evidentiary support, argued that the property should be valued at $7,600,000.00. The Court's valuation in this case is wholly ignored. At the August 31, 2020 hearing, Dr. Testa, Debtor's representative, testified that he stipulated to a $7,600,000.00 value in August 2019, yet his assertion is unsupported by evidence

---

[8] ECF No. 169.
[9] ECF No. 193.

before the Court and filings by his counsel after the alleged stipulation contradicted his testimony.[10]

Moreover, Debtor's self-help remedies are unavailing. The Court determined that "Debtor may not withdraw funds from the established Wilmington Trust, N.A. Reserves without first curing its Events of Default under the Loan Agreement."[11] The Court detailed findings in its Memorandum Opinion with respect to each Event of Default.[12] Despite this determination, Debtor failed to provide evidence that any Events of Default have been cured. Instead, Dr. Testa simply refuted the Court's determination. Additionally, Dr. Testa's testimony that the Debtor is permitted some form of forbearance regarding the Wilmington Trust, N.A. loan is wholly unsupported by any evidence in the record.

To confirm a proposed plan of reorganization, the plan proponent must demonstrate that the plan meets the requirements of § 1129(a) of the Bankruptcy Code by a preponderance of the evidence.[13] Alternatively, if the requirement of acceptance by all impaired classes—§ 1129(a)(8)—is not met, confirmation can still be achieved if the plan "does not discriminate unfairly, and is fair and equitable, with respect to each class of claims . . . that is impaired under, and has not accepted, the plan."[14] Here, as Wilmington Trust, N.A., an impaired class, has objected to the Modified Plan, the Modified Plan has not been accepted by all impaired classes. As such, the Court turns to Wilmington Trust, N.A.'s contention that Debtor's Modified Plan fails to satisfy to § 1129(a)(7) and (11).

Under § 1129(a)(7), each holder of a claim in a class must either accept the plan or receive at least as much as it would receive in a chapter 7 liquidation.[15] This is referred to as the "best interest of creditors" test. Here, on May 29, 2020, this Court valued Debtor's property at $13,200,000.00 and Wilmington Trust N.A.'s secured claim as $13,200,000.00.[16] In addition, Wilmington Trust, N.A. has an unsecured claim in the amount of $1,440,999.81.[17] Debtor's Modified Plan proposes to pay Wilmington Trust, N.A. a total of $7,600,000.00 over 360 months for its secured claim.[18] Debtor's Modified Plan does not provide for payment of the remaining $5,600,00.00 of Wilmington Trust, N.A.'s secured claim. If Debtor intends to treat the remaining portion of Wilmington Trust N.A.'s secured claim as an unsecured claim, Wilmington Trust, N.A. would receive $352,049.99, which is 5% of its total unsecured claim, as proposed in the plan.[19] That would bring the total payment to Wilmington Trust, N.A. to $7,952,049.99. Under a chapter 7 liquidation, however, sale of Debtor's property would produce $13,200,000.00, less the expenses of sale, for Wilmington Trust, N.A. Debtor failed to produce persuasive evidence justifying a modification to the Court's valuation. Therefore, Debtor's current plan proposal

---

[10] *See* ECF No. 154.
[11] ECF No. 168.
[12] ECF Nos. 168–169.
[13] *Matter of T-H New Orleans Ltd. P'ship*, 116 F.3d at 801; *see* 11 U.S.C. § 1129(a).
[14] *In re Geijsel*, 480 B.R. 238, 253 (Bankr. N.D. Tex. 2012); *see* 11 U.S.C. § 1129(b).
[15] 11 U.S.C. § 1129(a)(7).
[16] ECF Nos. 168–169.
[17] *Id.*; In Wilmington Trust's Objection at ECF No. 177, Wilmington Trust values its unsecured claim as $1,440,999.81 based on its proof of claim. The Court found in its May 29, 2020 Opinion and Order that Wilmington Trust had an allowable claim in an amount not to exceed $15,060,084.74.
[18] ECF No. 180.
[19] *Id.* at 4.

would provide Wilmington Trust, N.A. with less than it would receive under a chapter 7 liquidation, failing to meet the requirements of § 1129(a)(7). As such, the Debtor's Modified Plan fails to meet the requirements of § 1129(a)(7).

Pursuant to § 1129(a)(11), a debtor's plan is feasible if "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor . . . unless such liquidation or reorganization is proposed in the plan."[20] Under the feasibility standard, a debtor must demonstrate that its plan offers a reasonable possibility of success by a preponderance of the evidence.[21] Here, the Court finds that Debtor fails to establish feasibility in its Modified Plan. As discussed herein, Debtor's Modified Plan disregards the Court's feasibility concerns in its May 29, 2020 Memorandum Opinion and Order. The Court finds the inconsistencies in the Modified Plan set forth by Wilmington Trust, N.A. persuasive. Additionally, while Dr. Testa testified that he would fund any shortfall of payments set forth in the Modified Plan, his promise remains non-binding and illusory. There is no recourse for Dr. Testa's failure to fund the Debtor under the Modified Plan. As such, the Court finds that the Debtor's Modified Plan fails to satisfy § 1129(a)(11). The Court now turns its attention to Wilmington Trust, N.A.'s Motion for Relief.

In its Motion for Relief, Wilmington Trust, N.A. asserts that in the absence of a confirmable plan or monthly payments, 11 U.S.C. § 362(d)(3) requires that the Court grant stay relief.[22] Under § 362(d)(3), in a single asset real estate case, the court shall grant relief from the automatic stay in favor of a moving secured creditor, unless, not later than 90 days after the entry of the order for relief (or such other later date as the court may determine, for cause within the 90–day period) or 30 days after the court determines that the debtor is subject to Code § 362(d)(3), whichever is later, either:

(A) the debtor has filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time; or
(B) the debtor has commenced monthly payments that:
    (i)    may, in the debtor's sole discretion, notwithstanding Code § 363(c)(2), be made from rents or other income generated before, on or after the date of the commencement of the case by or from the property to each creditor whose claim is secured by such real estate (other than judgment liens or unmatured statutory liens), and
    (ii)   are in an amount equal to interest at the then applicable nondefault contract rate of interest on the value of the creditor's interest in real estate.

Here, Debtor's case was filed as a single asset real estate case, and Wilmington Trust N.A is a secured creditor, so § 362(d)(3) applies.[23] Wilmington Trust, N.A. argues that the Motion for relief should be granted under § 362(d)(3) because the Debtor did not file a confirmable plan of reorganization within ninety days of the petition date and the Debtor is not making monthly

---

[20] 11 U.S.C. § 1129(a)(11).
[21] *See Matter of T-H New Orleans Ltd. P'ship*, 116 F.3d at 801.
[22] ECF No. 177.
[23] ECF Nos. 1, 168.

payments in an amount equal to interest at the nondefault contract rate of interest.[24] While it may be true that Debtor has failed to make a payment since March 2020, the Debtor has not violated § 362(d)(3) because the Debtor *commenced* monthly payments within the prescribed time limit as discussed in the Court's May 29, 2020 Memorandum Opinion and Order. That is what the statute calls for, the commencement of payments. Since the requirements under § 362(d)(3) are to be read disjunctively, it has not been violated. Accordingly, the Court denies Wilmington Trust, N.A.'s request to grant stay relief under § 362(d)(3).

However, Wilmington Trust, N.A.'s motion for relief from stay pursuant to section 362(d)(2) filed on October 4, 2019 remains pending.[25] In the May 29, 2020 Memorandum Opinion and Order, the Court held that "the automatic stay will remain in place conditioned upon the Debtor's filing of a modified plan within forty five (45) calendar days from entry of this Court's Memorandum Opinion and Order on the Court's docket that addresses the Court's feasibility concerns discussed herein and takes into account treatment of Wilmington Trust, N.A.'s claim."[26] As such, feasibility concerns with respect to the Debtor's Modified Plan must be evaluated.

Section 362(d)(2) of the Bankruptcy Code allows relief from the automatic stay with respect to property if two elements are satisfied: (i) the debtor has no equity in the property, and (ii) such property is not necessary to an effective reorganization.[27] Showing that collateral is necessary to an effective reorganization requires demonstrating both that the property is needed for a potential reorganization and that there can be an effective reorganization in the sense that there is "a reasonable possibility of a successful reorganization within a reasonable time."[28]

Here, the Court has already found that Wilmington Trust, N.A. has an allowable claim against Debtor in an amount not to exceed $15,060,084.74.[29] Pursuant to its amended proof of claim, Wilmington Trust, N.A. now values its allowable claim at $14,640,999.81.[30] With the Debtor's Property valued at $13,200,000.00, Debtor has no equity in the Property, serving as grounds for granting Wilmington Trust's Motion for Relief under § 362(d)(2). Additionally, while the Court does not accept the Debtor's position, the Debtor's change in position to value the Property at $7,600,000.00 further supports that Debtor holds no equity in the Property. Nevertheless, in order to be "necessary to have an effective reorganization," the Modified Plan must demonstrate a reasonable possibility of a successful reorganization within a reasonable time, which it does not.[31] As discussed herein, the Debtor's Modified Plan is riddled, inter alia, with feasibility concerns. The Debtor entirely ignored the Court's detailed concerns in its May 29, 2020 Memorandum Opinion and Order, and Dr. Testa's testimony highlighted the inadequacies in the Debtor's Modified Plan. Dr. Testa neglected to bind himself to funding any shortfalls under the Modified Plan and provided no bank statements or demonstrated ability to pay beyond

---

[24] ECF No. 177.
[25] ECF No. 125.
[26] ECF No. 168.
[27] 11 U.S.C. § 363(d)(2).
[28] *In re JCP Properties, Ltd.*, 540 B.R. at 617; *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 375–76, (1988).
[29] ECF Nos. 168–169.
[30] ECF No. 193.
[31] *See* ECF No. 168.

vague testimony alleging an ability to outright purchase the Property with an existing line of credit.  The Court finds Dr. Testa's statements not only illusory but without any evidentiary support.  Additionally, and perhaps more troubling, Dr. Testa readily admitted to converting Wilmington Trust, N.A.'s cash collateral for purposes such as building renovations and setting up secret ad valorem tax and insurance escrow accounts, none of which were authorized by the Wilmington Trust N.A. loan documents, much less this Court.  Disagreements with orders by this Court are not a sufficient reason to trample bankruptcy statutes and this Court's orders.  Lastly, it is undisputed that Debtor has not paid Wilmington Trust, N.A. since March 2020, and Debtor has no plans of making any more payments to Wilmington Trust, N.A. for the remainder of the 2020 year.[32]

Therefore, because the Plan fails to meet the requirements of § 1129(a)(7) and (11), confirmation pursuant to §1129(b) need not be considered.  After considering Debtor's Modified Plan, arguments of counsel, applicable law, credibility of witnesses, the Court finds that confirmation of the Debtor's Modified Plain will be denied, and Wilmington Trust, N.A.'s Motion for Relief will be granted.  It is therefore

**ORDERED**: that

1. Confirmation of Northbelt, LLC's Modified Chapter 11 Plan[33] is hereby DENIED.

2. Wilmington Trust, N.A.'s Motion for Relief from Stay[34] is GRANTED.  Pursuant to 11 U.S.C. § 362, the automatic stay is terminated.

SIGNED 09/02/2020.

_____
Eduardo V. Rodriguez
United States Bankruptcy Judge

---

[32] ECF No. 177.
[33] ECF No. 180.
[34] ECF No. 177.